# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROLYN GLENN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17-CV-02974 ) |
| BOARD OF EDUCATION OF BARRINGTON 220 COMMUNITY UNIT SCHOOL DISTRICT, | ) Judge John J. Tharp, Jr. ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Glenn alleges that the Barrington 220 Community Unit School District ("School District") discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") when it hired a less qualified male to fill an open position as a District Technology Support Associate and by imposing a hostile work environment. The District maintains that the complaint is both time-barred and short on facts that support her claim, but the complaint satisfies the minimal pleading requirements for employment discrimination claims that prevail in this Circuit and, accordingly, the motion to dismiss is denied.

## I. BACKGROUND[1]

From 2000 to 2016, Glenn was a School District employee, most recently a Computer Services Technician. ECF No. 14, Am. Compl. ¶¶ 8, 10–11, 46. Glenn alleges that her immediate supervisor, Russell Vander Mey, consistently treated Glenn and other female employees

---

[1] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

significantly worse than similarly-situated male employees. *Id.* ¶ 21. In particular, Vander Mey communicated with Glenn and other female employees in a manner that was more harassing, condescending, and unprofessional than the manner with which he communicated with male employees. *Id.* ¶ 14.

On one occasion, Glenn and at least one other male technician—Jason Bryant—imaged computers in a way that Vander Mey viewed as unsatisfactory. *Id.* ¶¶ 22–27. Vander Mey reprimanded and belittled Glenn but did not reprimand Bryant. *Id.* ¶ 27. Vander Mey also did not apologize to Glenn after he learned that the problem had been caused by a software issue rather than technician error. *Id.* ¶ 29. On two other occasions, Vander Mey's conduct reduced female employees to tears. *Id.* ¶¶ 30–36. Once, Vander Mey yelled at Glenn and another female employee because they asked another employee to help them with a task, which caused the other female employee to cry. *Id.* ¶¶ 30–32. On another occasion, Vander Mey yelled at Glenn for listening to someone who was not her boss, which caused Glenn to cry. *Id.* ¶¶ 33–36.

Glenn reported Vander Mey's conduct to her supervisors and human resources on multiple occasions, but she was told to bring her allegations to Vander Mey (the object of the allegations) and discouraged from filing a formal written complaint. *Id.* ¶¶ 13–18. In or around November 2014, Glenn filed a formal written complaint about Vander Mey's conduct. *Id.* ¶ 37. Glenn received a letter from a supervisor in February 2015 advising that an investigation into Vander Mey's conduct concluded that Vander Mey had been unprofessional and disrespectful toward Glenn, but no disciplinary action was taken against Vander Mey. *Id.* ¶¶ 20, 39–41. Glenn was later transferred from the high school to a middle school, *id.* ¶ 41, after which she had no further contact with Vander Mey until about January 2016, when "Vander Mey came to Plaintiff's workspace in the middle school to confront her over workplace problems," *id.* ¶¶ 42, 44. During the encounter,

Vander Mey belittled Glenn until she told him that another supervisor had already discussed the issues with her. *Id.* ¶ 45.

The School District sent Glenn a letter in March of 2016 informing her that they were dismissing her from her position as a Computer Services Technician, but that she would be considered for future vacancies. *Id.* ¶¶ 11, 46–47. Glenn subsequently applied for a District Technology Support Associate position, which she viewed as comparable to her previous position. *Id.* ¶ 48. The School District hired Bryant to fill the position instead of Glenn, even though Bryant had been employed by the School District for significantly less time and was not as qualified as Glenn. *Id.* ¶¶ 48–49. Glenn was instead hired as a Library/Technology Assistant, a position for which she was "grossly overqualified" and that paid significantly less than her previous position. *Id.* ¶¶ 48, 51–52. Vander Mey served on the board that decided whether to hire Glenn, and Glenn believes Vander Mey made the decision to offer Glenn the Library/Technology Assistant position. *Id.* ¶¶ 50, 53. Glenn initially accepted the Library/Technology Assistant position before resigning in July of 2016. *Id.* ¶ 54.

Glenn is a female who performed her employment duties to all legitimate expectations. *Id.* ¶¶ 12, 55. Glenn filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 28, 2016. *Id.* ¶ 9(a). Glenn later filed her Amended Complaint alleging that the School District discriminated against her on the basis of her sex. ECF No. 14. The School District has moved to dismiss the Amended Complaint. Defendant Board of Education of Barrington Community Unit School District 220's Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. 24.

## II.  DISCUSSION

### A.     Pleading Standard

Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. Rule 12(b)(6) allows for a motion to dismiss if the complaint fails to state a claim. Generally, to survive a motion to dismiss, a complaint must contain allegations that, if taken as true, plausibly suggest that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The plaintiff must show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" generally does not suffice. *Id.*

In the context of an employment discrimination claim, the Seventh Circuit has held that pleadings need only satisfy the pleading standard set forth by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Noting that the Supreme Court acknowledged but did not overrule *Swierkiewicz* in *Twombly*, the Seventh Circuit has instructed that "to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex. In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084–85 (7th Cir. 2008)) (internal citations and quotations omitted).

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a). The plaintiff needs only allege that the defendant

4

refused to hire her because of her protected legal status (e.g., her sex) in order to sufficiently plead a claim. *See E.E.O.C. v. Concentra Health Services*, 496 F.3d 773, 781 (7th Cir. 2007) (stating that employment discrimination plaintiffs may allege defendant's intent at high level of generality). And "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her [protected class], there is no further information that is both easy to provide and of clear critical importance to the claim." *Id.* at 782. "'I was turned down for a job because of my [protected status]' is all a complaint has to say." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

### B. Sex Discrimination Claim

The Amended Complaint plainly alleges that the School District denied her an equal opportunity for employment due to her gender, Am. Compl. ¶ 58, but it does more than simply state, "I was discriminated against due to my sex." *See Bennett*, 153 F.3d at 518. Glenn goes further to allege that the School District refused to hire her under circumstances that give rise to an inference of discrimination. Allegations that can give rise to an inference of discrimination include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, evidence that similarly situated employees outside the protected class received systematically better treatment, and evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class. *Atanus v. Perry*, 520 F.3d 662, 672 (2008) (citing *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)). The Amended Complaint alleges that the School District hired Bryant, a male, to fill the District Technology Associate position even though Bryant was allegedly less qualified and less experienced than Glenn. Am. Compl. ¶¶ 48–49. Glenn viewed the District Technology Associate position as comparable to her previous position from which the School District had terminated her. *Id.* ¶¶ 46–48. Glenn was instead offered a position as a Library/Technology

5

Assistant, a position for which she was "grossly overqualified" and that paid less than her previous position. *Id.* ¶¶ 51–52. Glenn has thus adequately alleged that the School District discriminated against her on the basis of her sex by terminating her and failing to hire her for the District Technology Associate position. *Id.* ¶¶ 46–53. Adverse employment actions that invoke the protections of Title VII include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510–11 (7th Cir. 1999).

In addition, Glenn has alleged facts that state a plausible hostile environment claim based on sex. To state a hostile environment claim, a plaintiff must sufficiently allege conduct that gives rise to an inference that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041 (7th Cir. 2005). The Amended Complaint alleges that Vander Mey generally treated Glenn and other female employees significantly worse than similarly-situated male employees. *Id.* ¶ 21. In particular, Vander Mey communicated with Glenn and other female employees in a manner that was more harassing, condescending, and unprofessional than the manner with which he communicated with male employees. *Id.* ¶ 14. The Amended Complaint alleges an instance where a male was not reprimanded for making the same apparent mistake as Glenn, *id.* ¶¶ 22–29, and other instances where Vander Mey belittled or yelled at Glenn and another female, *id.* ¶¶ 30–36, 45. And while there was a significant period when Glenn was no longer being supervised by Vander Mey, the Court is required to take all reasonable inferences in Glenn's favor, and it is a plausible inference that Vander Mey's berating of Glenn in January 2016 was a continuation of the harassment Vander Mey had allegedly been doling out when he was directly supervising Glenn.

6

Glenn's discrimination theories, to be sure, will require some factual development. The Amended Complaint's allegations about her encounters with Vander Mey are sketchy and invite skepticism about the potential success of the claim if ultimately there is not more to the claim than alleged. But whether Glenn is likely to prove her claim is not the relevant question at this juncture. *Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation omitted). Under the prevailing pleading standards articulated by the Seventh Circuit, the allegations of the Amended Complaint suffice to state a plausible claim that provides the requisite notice to the defendant. A Title VII plaintiff needs only allege that the defendant took an adverse employment action against her on the basis of her sex and provide notice of the basis for her claim. *Luevano*, 722 F.3d at 1028. The Amended Complaint clears that hurdle with room to spare.

### C. Alternative Requests for Relief

The School District requests that if its motion to dismiss is denied, in the alternative, that the Court strike or dismiss available methods of proof, legal theories, and prayers for relief. Specifically, the School District requests that the Court strike all untimely allegations, Memorandum in Support of Defendant Board of Education of Barrington Community Unit School District 220's Motion to Dimiss ("Mem.") at 5, ECF No. 25; Reply Brief in Support of Defendant Board of Education of Barrington Community Unit School District 220's Motion to Dismiss ("Reply") at 1, 7, ECF No. 29; dismiss Glenn's harassment claim, Reply at 1; and strike Glenn's request for an injunction, Mem. at 11–12.

i. **Timeliness**

Title VII requires Glenn to have filed a charge with the EEOC within 300 days of the allegedly unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1).[2] Glenn filed her EEOC charge on October 28, 2016, so the Court must consider whether any of the alleged conduct that occurred after January 2, 2016[3] gives rise to a claim for relief. Glenn was terminated in March of 2016. Am. Compl. ¶ 46. Although the Amended Complaint does not allege an exact date when the School District decided not to hire her for the District Technology Support Associate position, it can reasonably be inferred to have happened sometime after the School District informed her in March of 2016 that she would be terminated but considered for future vacancies, but before she resigned in July of 2016. *Id.* ¶¶ 46–54. The termination and failure to hire decisions therefore must have occurred within the 300-day window of her filing the EEOC charge. Vander Mey also allegedly confronted Glenn over workplace problems and belittled her in or around January 2016, plausibly within the 300-day window. *Id.* ¶¶ 42–45.

As for allegations of conduct that occurred before January 2, 2016, Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also, e.g.*, *Malin v. Hospira, Inc.*, 762 F.3d 552, 561 (7th Cir. 2014) (holding that district court erred in failing to consider events outside of 300-day window as circumstantial evidence of unlawful retaliation within 300-day window). Further, events outside the 300-day window may be considered as evidence with respect to a hostile work environment theory: "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court

---

[2] There are certain exceptions that are not relevant to the Court's analysis.

[3] The Court calculates this date as January 2, 2016, not January 5, 2016, as stated in the School District's brief. Mem. at 4.

for the purposes of determining liability." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117. Thus, while Glenn may not bring an independent cause of action for conduct that occurred before January 2, 2016, allegations about acts before that date need not be independently actionable to survive as part of a complaint. Glenn has alleged that Vander Mey was involved in the decision that was made between March and July of 2016 to hire Glenn at the lower-paying position. Am. Compl. ¶¶ 50, 53. The entire collection of alleged interactions between the School District, Vander Mey, and Glenn is potentially probative of whether Glenn was subjected to a hostile work environment and whether the ultimate decisions to terminate and refuse to hire her at a comparable position were discriminatory. The allegations in the Amended Complaint of conduct that occurred before January 2, 2016 are therefore potentially relevant to Glenn's sex discrimination claim, and there has been no showing that allowing such language to remain in the complaint would be clearly and unfairly prejudicial. *See Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013) ("A motion to strike should not be granted unless the language in pleading has 'no possible relation' to the controversy and is clearly prejudicial.").

    ii.  **Dismissal of "Harassment Claim"**

The School District requests that the Court dismiss Glenn's "harassment claim" as a form of alternative relief, asserting that she effectively abandoned her hostile work environment theory in her brief by defending the complaint as adequately alleging a failure-to-hire theory. In making this argument, the School District confuses a claim with a legal theory and requests relief that Federal Rule of Civil Procedure 12(b)(6) does not authorize. A claim is a collection of facts that could entitle the plaintiff to relief under *any* legal theory. As noted above, the facts alleged suffice to state a claim based on both a failure-to-hire theory and a hostile work environment theory. But even if the Court had concluded that the facts alleged were insufficient to support liability under a

9

hostile work environment theory, there would be no occasion now to hold that such a theory recovery is definitively barred. Plaintiffs are not required to identify in the complaint the legal theory, or theories, on which they wish to proceed. It follows, then, that there is no penalty to be imposed for invoking the wrong theory in the pleadings. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 997 (N.D. Ill. 2013) ("[T]he critical question is whether the plaintiffs have stated a plausible claim for relief under some recognized legal theory, not whether they have properly labeled that theory."). Rule 12(b)(6), moreover, "doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original); s*ee also Hobbs v. Gerber*, No. 17 C 3534, 2018 WL 3861571, at *4 (N.D. Ill. Aug. 14, 2018) (Rule 12(b)(6) "does not speak of the dismissal of legal theories."); *Zidek v. Analgesic Healthcare, Inc.*, No. 13 C 7742, 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014) (Leinenweber, J.) ("[I]f the Court were to grant partial relief on this Motion, it would not be 'dismissing claims' but rather limiting legal theories available to Plaintiffs to prove their entitlement to damages for these acts. The federal rules allow for dismissal for 'failure to state a claim' but do not provide a basis for striking individual legal theories."). Where a complaint will survive based on some legal theory, there is no occasion to preclude the defendant from pursuing alternative theories as well, even if the allegations of the complaint would not appear to support recovery under those alternative theories.

And although the School District points out that the failure to hire claim was not referenced under Count I of the Amended Complaint, Reply at 7, "[n]o technical form" of pleading is required, Fed. R. Civ. P. 8(d)(1). The School District has also asked the Court to rule that Glenn may not rely on her resignation as evidence of discrimination by the School District, presumably because

from the School District's perspective, she voluntarily resigned. Mem. at 11. Such a factual dispute is not for the Court to decide at this stage. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012) ("[J]udges must not make findings of fact at the pleading stage.").

### iii. Request for Injunction

Finally, the School District asks the Court, pursuant to Federal Rule of Civil Procedure 12(f), to strike Glenn's prayer for relief that would enjoin the School District from engaging in a policy or practice of discrimination. Mem. at 11–12. It is enough here to say that Rule 12(f) does not authorize the striking of a prayer for relief, but only insufficient defenses "or any redundant, immaterial, impertinent, or scandalous matter." Glenn's prayer for injunctive relief is none of those. Nor does Rule 12(b)(6) authorize the Court to dismiss Glenn's request for injunctive relief, which is not a "claim."

Even putting those technicalities aside, the School District's argument misses the mark. Glenn has alleged that she was discriminated against by the School District on the basis of her sex, which, if established, could give rise to an inference that she was discriminated against pursuant to a broader policy or practice of discrimination that may warrant injunctive relief. "Once employment discrimination has been shown . . . district judges have broad discretion to issue injunctions addressed to the proven conduct." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). Striking the prayer for injunctive relief where an adequate claim for discrimination has been alleged is not appropriate before Glenn has had an opportunity to attempt to support her allegations through discovery.

* * *

For the foregoing reasons, the defendant's motion to dismiss and all other requests for relief therein are denied.

Dated: October 25, 2018

_John J. Tharp, Jr._
John J. Tharp, Jr.
United States District Judge